## CONDITIONS WHICH MUNICIPALITY MAY IMPOSE ON STREET RAILWAY COMPANY.

Common Pleas Court of Lorain County.

ELYRIA v. CLEVELAND, S. W. & COL. RAILWAY.

Decided, 1908.

*Municipal Corporations—Franchises—Conditions Which may be Imposed on a Street Railway Company—May be Required to Either Widen Bridge or Pay a Stipulated Amount into the City Treasury—Sections 1536-183, 1536-184, 1536-185 and 3437.*

1. In Ohio a municipal corporation in granting a street railroad company permission to construct a street railroad in the streets of the city, may at least prescribe such terms and conditions as are in furtherance of the duty which the municipal corporation owes to the public and are essential to the preservation of the streets for public use, provided such terms and conditions are not inconsistent with the restrictions placed upon, nor inconsistent with the rights granted to such street railroad company by the Legislature.

2. When an extension of an existing franchise is granted, the city has authority to prescribe that the street railroad company shall widen a bridge occupied by it or in lieu thereof pay a stipulated amount to the city, at the city's option, and such provision, when the ordinance containing the same has been duly accepted by the street railroad company, becomes an agreement binding the street railroad company to the performance of the same.

*H. A. Pounds,* City Solicitor, and *M. B. & H. H. Johnson,* for plaintiff.

*C. W. Collister, E. G., H. C. & T. C. Johnson* and *Thompson, Glitsch & Cinniger,* contra.

WASHBURN, J.

Heard on demurrer.

The petition in this case discloses that the plaintiff is a municipal corporation and the defendant is a private corporation, owning and operating an electric railroad which, on October 22, 1907, extended through the city of Elyria and over and across a certain bridge in the city of Elyria.

On October 22, 1907, the plaintiff passed an ordinance granting to the defendant "a renewal of previous grants and granting a right to lay certain street railroad tracks in the city of Elyria and the right to extend certain street railroad tracks and to lay additional tracks in streets of said city and the right to construct, maintain and operate a street railway in, upon and over certain streets in said city, together with the right to construct, maintain and operate all the necssary poles, wires, fixtures and appliances requisite for the construction, maintenance and operation of the said street railway; that said rights were granted in consideration of certain agreements and contained certain conditions named in said ordinance, among which was:

"The railway company, by the acceptance of this ordinance, agrees as follows:

" 'To pave the roadway of the bridge on East Bridge street on which its tracks are now located, with the same material and in the same manner as East Bridge street at the place adjoining said bridge is now paved, and to widen said bridge to the full width of roadway, or in lieu of widening said bridge, to pay to the city of Elyria the sum of $15,000, at the city's option, which widening shall be fully completed on or before October 1, 1908, or in case the city exercises its option of accepting the money in lieu of said widening, that said money shall be paid into the city treasury on or before March 1, 1908.' "

Said ordinance was approved by the mayor on October 28, 1907, and thereafter duly published, and said ordinance was duly accepted in writing by the defendant on October 28, 1907, "by the terms of which written acceptance said defendant agreed to be bound by the obligations and conditions which said ordinance imposed upon said defendant." Said city "on November 26, 1907, by resolution duly passed, elected to accept said $15,000 in lieu of the widening of said bridge and on November 29, 1907, duly notified said defendant in writing that plaintiff had so elected."

The defendant failed to pay said $15,000 on or before March 1, 1908, and the plaintiff on March 5, 1908, made written demand for the same, but the defendant has wholly failed to make any payment whatever. The prayer of the petition is for judgment for $15,000 and interest.

Copies of said ordinance and written acceptance thereof are attached to the petition, but not made part thereof.

A demurrer has been filed to this petition, the claim being that the city had no right or authority in law by a condition in said ordinance to make a contract with the defendant for the payment of said $15,000.

Certain sections of the Revised Statutes of Ohio will be considered in determining this question, and it may be proper to read them now.

Section 3437.  "Street railways, with single or double tracks, side-tracks, and turn-outs, may be constructed or extended within or without, or partly within and partly without, any municipal corporation or unincorporated village; and offices, depots, and other necessary buildings for such railways may also be constructed."

Section 29 of the muncipal code of 1902 (1536-183, Revised Statutes).  "The right so to construct or extend such railway, as provided in Section 3437, Revised Statutes of Ohio, within or beyond the limits of a municipal corporation can be granted only by council thereof, by ordinance,  *  *  *  and that no extension of any street railroad located wholly without any such city, or of any street railroad wherever located, which has been or shall be built in pursuance of a right obtained from any source or authority other than a municipal corporation, shall be made within the limits of such city, except as a new route, and subject to the provision of Section 2501 of the Revised Statutes of Ohio and Section 30 of this act."

Section 2501 (1536-184, Revised Statutes).  "No corporation, individual or individuals, shall perform any work in the construction of a street railroad, until application for leave is made to the council in writing, and the council by ordinance shall have granted permission, and prescribed the terms and conditions upon, and the manner in which the road shall be constructed and operated, and the streets and alleys which shall be used and occupied therefor, but the council may renew any such grant at its expiration upon such conditions as may be considered conducive to the public interest."

Section 30, municipal code of 1902 (1536-185, Revised Statutes). "Nothing mentioned in Section 2501 of the Revised Statutes of Ohio shall be done; no ordinance or resolution to establish or define a street railroad route shall be passed, and no action inviting proposals to construct and operate such railroad shall be

taken by the council; and no ordinance for the purpose specified in Section 2501 of the Revised Statutes of Ohio shall be passed until public notice of the application therefor has been given by the clerk of the corporation once a week, for the period of at least three consecutive weeks in one or more of the daily papers, if there be such, and if not, then in one or more weekly papers published in the corporation; and no such grant as mentioned in Section 2501 of the Revised Statutes of Ohio shall be made, except to the corporation, individual or individuals, that will agree to carry passengers upon said proposed railroad at the lowest rates of fare, and shall have previously obtained the written consent of a majority of the property holders upon each street or part thereof, on the line of the proposed street railroad, represented by the feet front of the property abutting on the several streets along which such road is proposed to be constructed.

"Provided, that no grant nor renewal of any grant for the construction or operation of any street railroad, shall be valid for a greater period than twenty-five years from the date of such grant or renewal; and after such grant or renewal of the grant is made, whether by special or general ordinance, the municipal corporation shall not, during the term of such grant or renewal, release the grantee from any obligation or liability imposed by the terms of such grant or renewal of a grant."

From a consideration of these and other statutes and an examination of the authorities, I am of the opinion that the streets and highways belong to the state and are under its control, but the state has placed the streets of a city under the control of the city authorities, subject to such regulations and restrictions as the state has or may hereafter see fit to impose. The statutes of Ohio confer upon municipal corporations plenary power of control over their streets and has vested in them the fee thereof, in trust for and to the use of the public for said purposes, subject to the right of the state to direct the mode of administering that trust, or even to administer it for itself. So far as the state has undertaken to do this, its action is, of course, binding upon the municipal corporations of the state.

The view most favorable to the defendant in the case at bar is that the state has conferred upon a corporation organized for street railway purposes the right to construct and operate a street railroad in municipal corporations, by Section 3437, Revised Statutes—conditioned upon the city's yielding its per-

mission under the regulations prescribed by law. And granting that the defendant derived its power to construct its railway in the streets of Elyria from the state, which I am inclined to think is the correct view, the question is, what terms and conditions under the laws of Ohio had the city a right to prescribe before it yielded its permission to the use of its streets by the defendant company?

Under the view of the law here taken, it could prescribe only such terms and conditions as the state had granted it authority to prescribe. Under Section 2501, Revised Statutes, heretofore quoted, the city in granting permission to use its streets for a street railway is given authority to "prescribe the terms and conditions upon and the manner in which the road shall be constructed and operated."

What "terms and conditions" are authorized to be made by the cities under this authority? Very few terms and conditions are prescribed by the Legislature itself and such as there are I will refer to later, and the policy of the law seems to be to leave to the local authorities the right to prescribe the many and varied terms and conditions appropriate to the different localities, and which must always be agreed to by the companies receiving the permission to construct and operate a street railroad in the streets of the cities. This policy is convenient and affords protection to local interest. Whether or not a certain route is practical or desirable, what motive power should be adopted, whether the road should be single or double tracked, the kind of rails to be used, what the gauge of the track should be, how frequently cars should be run and between what hours, regulations as to street paving and repairs, joint use of tracks by different companies and regulations as to the removal of snow and the sweeping and sprinkling of tracks, are a few of the questions which may arise, and for imperative local reasons, governed by time, place and circumstances, they may be decided differently for various cities and villages, yet wisely for all. Hence, the Legislature of this state has adopted the policy of permitting the local authorities and the corporations to settle these matters by agreement made at the time permission is granted.

But it is said that the Legislature having specifically pro-
vided for certain terms and conditions which municipal corpora-
tions may require, has indicated a legislative intent or policy to
restrict the power of the council in prescribing terms and con-
ditions to those things which are specifically provided for.

It is true that at the time the original section which is now
Section 2501 was passed, the Legislature as a part of the same act
gave authority to municipal corporations to ''require any part
or all of the track between the rails of any street railroad con-
structed within the corporate limits, to be paved with stone,''
etc., and at the same time required the council, when the street
was less than sixty feet in width, to prescribe certain conditions
as to the crown, curb and gutter of the street (Sections 2503,
2504).

If I understand the contention of counsel, it is that municipal
corporations in Ohio are restricted to these terms and conditions
for which specific provision has been made by the Legislature
and to such regulations as can be made under their general
police powers. In my judgment such a construction of the acts
of the Legislature is not warranted.

In the first place, whatever regulations municipal corporations
have a right to make under their police powers, can be made
without making them the subject of an agreement in an ordi-
nance granting permission to use the streets, and therefore
there is no necessity for including them in such ordinance
(*Townsend* v. *Circleville*, 78 Ohio St., 122). And in the second
place if the power of municipal corporations be limited merely
to the matters of pavement, curb and gutter provided for in
Sections 2503 and 2504, Revised Statutes, then no force or
effect or meaning whatever is given to Section 2501 where mu-
nicipal corporations are given the general authority to ''pre-
scribe the terms and conditions upon and the manner in which
the road shall be constructed and operated.''

The better rule seems to be that while these matters for which
specific authority is granted may be considered in arriving at
the general policy of the Legislature, the powers of municipal
corporations are not limited to them, and while municipal cor-
porations have authority to make terms and regulations such as
are specifically provided for in these statutes, they also have

general authority to provide terms and conditions as provided
for in Section 2501, Revised Statutes. But, of course, they can
not legally insist upon such terms and conditions as are incon-
sistent with the rights granted to the company by the Legisla-
ture (*State* v. *Traction Co.*, 18 C. C., 490), nor inconsistent
with the restrictions already placed upon the company by the
Legislature, nor such as contravene the policy of the law as
shown by all the legislation on the subject.

An act of the Legislature which may be considered together
with these other laws in determining the general policy of the
Legislature of this state is contained in the municipal code of
1902, wherein the Legislature authorized the public authorities
in certain cities where street railways were being operated under
grants exacting car license fees, to agree with the companies
for the payment of a percentage of their gross receipts as a sub-
stitute for such car license fee, thus recognizing the right of
municipal corporations to exact such car license fees under its
general authority to prescribe the terms and conditions upon
which the street railroad should be constructed and operated
(Section 30, municipal code of 1902).

It is the common practice to insert many terms and conditions
in franchises of this kind; and strange to say very few of these
have ever been tested in the courts of this state, and in none of the
cases where tests have been made has the question raised by
demurrer in this case been determined.

The power given to municipal corporations to prescribe terms
and conditions is general, but of course it is not unlimited.
Terms and conditions which would contravene the policy of the
law as shown by all the legislation on this subject, are not war-
ranted. Accordingly, it has been held that the city has no right
to determine the method in which differences between the com-
pany and its employes should be settled, nor reserve in an ordi-
nance a right to purchase at a future date, for those matters are
contrary to the spirit of the law (*Raynolds* v. *Cleveland*, 2 C.
C.—N. S., 139). This holding is based upon the fact that such
terms and conditions tend to keep persons from bidding and to
increase the rate of fare, and it is said in argument that the
terms and conditions prescribed by the ordinance in the case
at bar are likewise contrary to the spirit of the law, because

they too tend to keep persons from bidding and to increase the rate of fare.

But a complete answer to this contention is found in the allegations of the petition which show that the case at bar was an extension, and that no bids were asked for or received. This case is not one where a new route was established and an original grant made to the lowest bidder, and whether or not in such a case the terms and conditions complained of in this case could be enforced, is not before the court. Here we have an extension of a former grant, and the terms and conditions complained of refer to the repair and widening of a bridge then occupied by the defendant's tracks.

The Legislature has placed the control of streets in the municipal corporations and has placed upon those corporations the duty of keeping said streets open, in repair and free from nuisance. It has also provided that the right given to street railways by Section 3437, Revised Statutes, to construct or extend their railways within the limits of a municipal corporation "can be granted only by the council thereof by ordinance." The Legislature has also provided that in granting such permission municipal corporations shall have authority to "prescribe the terms and conditions upon and the manner in which the road shall be constructed and operated."

Now, from the consideration of these statutes and the other statutes to which reference has been made, and considering the fact that the terms and conditions insisted upon by municipal corporations must be agreed to by the street railroads before they are of any force and effect, and considering that local reasons governed by time, place and circumstances may call for varied and different terms and conditions appropriate to the different localities, I am of the opinion that the Legislature of this state has adopted the policy of permitting the local authorities and the street railway corporations to settle by agreement made at the time the permission is granted, all such matters as are in furtherance of the duty which a municipal corporation owes to the public and are essential to the preservation of the streets for public use.

How is this policy contravened by an agreement such as was made in the case at bar? The defendant company had its tracks

upon the roadway of the bridge on East Bridge street. It de-
sired to have its right to use said bridge extended beyond the
time covered by the original permission. Accordingly the city
and the company agreed to the provisions of which complaint
is made, the company agreeing to pave the space between its
rails on said bridge and to widen said bridge to the full width
of the roadway, or in lieu thereof to pay $15,000, so that the
city itself might widen said bridge, said widening being made
desirable if not necessary, in part at least, by the defendant's
occupancy of the same, and the city on its part, in considera-
tion of the promise of the defendant to pay said sum, agreed to
such extension.

Assuming that the Legislature granted the defendant company
the right to build its line over said bridge, it did not thereby
place a burden upon the municipal corporation by requiring it
to build or repair the bridge for the benefit of the defendant.
The Legislature placed the duty of keeping that bridge in re-
pair upon the plaintiff. It also gave to the plaintiff the abso-
lute right to decline to extend the right of the defendant to
use said bridge. How can the spirit of the law be violated by
permitting the plaintiff to refuse to extend the defendant's right
to use that bridge, unless it bears the burden of widening it, so
that the general public shall not be deprived in whole or in
part of its right to use said bridge? Considering all the au-
thority that is vested in the municipal corporation in reference
to this matter, surely it had a right to protect itself against such
burden.

The city council having control over its streets and being
charged with the duty of keeping them open and in repair for
public use, and having the right to grant or withhold permis-
sion for the use of the same by a street railway, and having the
general right to prescribe terms and conditions if such permis-
sion is granted, when called upon to give consent may prescribe
terms which embrace the doing of all those things necessary to
the preservation of the street for public use.

If the agreement had been simply for the widening of the
bridge, I can not conceive how anyone could consistently claim
that that was contrary to the spirit of the law, and the fact that
the agreement provided for the payment of money in lieu of

said widening, being manifestly for the purpose of accomplishing the same object, does not, in my judgment, make the provision contrary to the spirit of the law.

The council had a right to insist at least upon such terms and conditions as were not inconsistent with the rights granted to the company by the Legislature, and which were not inconsistent with the restrictions already placed upon the company by the Legislature and which did not contravene the policy of the law as shown by all the legislation on the subject.

The provision in question is not prohibited by any of these considerations, and I therefore hold that the city had a right to enter into the agreement, and that the defendant, having agreed thereto, is bound thereby so far as this demurrer is concerned.

My attention has been called to the legislation and decisions in this state in reference to telephone companies, but the legislation as to street railroads is so different from the legislation as to telephones that I do not regard the latter as of any special significance.

The right of telephone companies to use the city streets has been conferred by direct grant to the telephone companies themselves, with power in the municipal authorities to agree upon the mode of use only, but without authority to demand or receive any compensation for the use of the street beyond what may be necessary to restore the pavement to its former state of usefulness. And under such restricted powers the municipal authorities can not enforce an agreement made by ordinance, accepted by the telephone company, granting permission to use the streets of the city upon condition that the company charge its subscribers not to exceed a certain price for its telephone service. *Farmer* v. *Telephone Co.*, 72 Ohio St., 526.

It will be noticed, however, that the grant to street railway companies in Section 3437, Revised Statutes, is not as clear as the grant to telephone companies in Section 3454, Revised Statutes, and also, that the powers of municipal corporations as to street railways are much greater in Section 2501 (Bates, 1536-183, 1536-184), Revised Statutes, than the powers of municipal corporations as to telephone companies in Section 3461, Revised Statutes.

Demurrer overruled.